IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

| | |
|---|---|
| NICOLE LYNN DUNFEE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY BERRYHILL,[1] ) <br> Acting Commissioner of Social Security, ) <br> ) <br> Defendant. ) | No. 2:14-cv-00080 <br><br> Judge Trauger |

## MEMORANDUM

Pending before the court is Plaintiff Nicole Lynn Dunfee's Motion for Judgment on the Administrative Record ("Motion") (Docket No. 14), filed with a Memorandum in Support (Docket No. 15). Defendant Commissioner of Social Security ("Commissioner") filed a Response in Opposition to Plaintiff's Motion. (Docket No. 16.) The court hereby withdraws the reference to the Magistrate Judge. Upon consideration of the parties' filings and the transcript of the administrative record (Docket No. 12),[2] and for the reasons set out herein, the Plaintiff's Motion (Docket No. 14) will be denied.

### I. Introduction

Dunfee filed an application for disability insurance benefits ("DIB") under Title II of the Social Security Act and an application for supplemental security income ("SSI") under Title XVI on January 11, 2011, both alleging a disability onset of May 15, 2008. (Tr. 12.) Dunfee's claim was denied at the initial and reconsideration stages of state agency review. Dunfee subsequently

---

[1] Nancy Berryhill became Acting Commissioner for the Social Security Administration on January 23, 2017.
[2] Referenced hereinafter by page number(s) following the abbreviation "Tr."

1

requested *de novo* review of her case by an Administrative Law Judge ("ALJ"). Dunfee appeared and testified at a hearing held on October 1, 2012. (Tr. 50–60.) A subsequent hearing was held on January 28, 2013. (Tr. 25–49.) Testimony was also received from a vocational expert during this subsequent hearing. (Tr. 43–48.) Dunfee was represented by counsel at the second hearing. At the conclusion of the second hearing, the matter was taken under advisement until March 4, 2013, when the ALJ issued a written decision finding Dunfee not disabled. (Tr. 9–24.) That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since May 15, 2008, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant had the following severe impairments: sleep apnea, obesity, and degenerative changes of the cervical spine (20 C.F.R. 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, … the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that she can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, stoop (bend at waist), kneel, crouch, and crawl. She can never work in proximity to moving, mechanical parts; work in high, exposed places; or operate motor vehicles.

6. The claimant is capable of performing past relevant work as a ward clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity. (20 C.F.R. 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from May 15, 2008, through the date of this decision (20 C.F.R. 404.1520(f) and 416.920(f)).

(Tr. 14–15, 17, 19.)

On June 25, 2014, the Appeals Council denied Dunfee's request for review of the ALJ's decision (Tr. 1–6), thereby rendering that decision the final decision of the SSA. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. § 405(g).

## II. Review of the Record

The following summary of the medical record is taken from the ALJ's decision:

> [T]he claimant underwent a sleep study in January 2008, wherein she was diagnosed with sleep apnea (Exhibit 1F).
>
> On December 18, 2012, Matthew King, M.D., completed a Lumbar Spine Residual Functional Capacity Questionnaire. Dr. King reported that the claimant's first visit to him was on November 29, 2011, and the claimant's last visit with him was January 12, 2012. He reported that Ms. Dunfee's diagnoses are: Back pain due to degenerative disks [sic], Paroxysmal leg movement syndrome, and mild sleep apnea. Her prognosis is fair. He indicated that these diagnoses are supported by MRI of the lumbar spine obtained December 8, 2011, and sleep study performed on December 13, 2011. He reported that the claimant's symptoms include back pain, muscle aches, and insomnia. He also indicated that he has not evaluated the claimant in the last 6 months. … He reported that the claimant's experience of pain or other symptoms is occasionally severe enough to interfere with attention and concentration. Dr. King reported that he has written no prescriptions for the claimant since January 2012. He indicated that her impairments have lasted or can be expected to last at least 12 months. Ms. Dunfee can walk 5 city blocks without rest or severe pain. She can sit more than 2 hours at one time, and stand 2 hours at one time. She can sit a total of about 4 hours in an 8-hour workday and stand/walk less than 2 hours in an 8-hour workday. Ms. Dunfee must walk around every 90 minutes for a period of 5 minutes each time. She does not require a sit/stand option. She does not need to take unscheduled breaks during an 8-hour workday. Her legs do not need to be elevated. She does not require the use of an assistive device for ambulation. She can frequently lift and carry 10 pounds and rarely lift and carry 20 pounds. She can never climb ladders; rarely climb stairs; and occasionally twist, stoop (bend), and crouch/squat. She does not have significant limitations with reaching, handling, or fingering. Dr. King reported that the earliest date that this description of

symptoms and limitations in this questionnaire applies is November 29, 2011.

…

Ms. Dunfee underwent a consultative examination by Donita Keown, M.D., on March 21, 2011. At that time, the claimant had a measured height of 66 inches and a weight of 199 pounds. Blood pressure 124/74, pulse rate 72, and respirations 16. Heart had regular rhythm, regular rate. Normal S1 and S2. There was no S3 or S4. No lateral displacement of PMI. No murmurs, rubs, or gallops. Pulses were +2 in all four limbs. No peripheral edema, cyanosis, or clubbing. Lungs were clear to auscultation bilaterally. There were no wheezes, rales, or rhonchi. No increased [sic] of AP diameter or use of accessory muscles to respire. After examination, Dr. Keown reported, "In general, this is a heavyset white female who looks to be stated years who was groomed casually, demonstrates normal hearing, speech, and cognition. The claimant ambulates with ease. She has no problems getting up from the chair. Performs unremarkable straightaway walk, tandem step, one-footed stand, and Romberg test." (Exhibit 6F).

The claimant has received emergency room treatment from Cookeville Regional Medical Center on December 30, 2012, due to neck pain. These records show she has received the diagnoses of neck pain, shoulder pain, acute neck pain, and cervical spondylolysis. CT of the cervical spine obtained that date was negative for fracture or traumatic malalignment. There was multilevel cervical spondylosis, most pronounced at the C5/C6 and C6/C7 levels. X-ray of the left shoulder was negative. Chest radiograph showed no acute cardiopulmonary process. X-ray of the left humerus was normal (Exhibit 16F).

On April 12, 2011, State Agency designated physician, Denise P. Bell, M.D., completed a Physical Residual Functional Capacity Assessment. She opined that the claimant has no exertional limitations. She also opined that the claimant has no postural, manipulative, visual, or exertional limitations. The only limitations Dr. Bell found the claimant to have is that she must avoid all exposure to hazards (machinery, heights, etc.).

…

On June 21, 2011, State Agency designated physician, Robert H. Heilpern, M.D., opined that the claimant had no severe physical

> impairments, either singly or combined, as that term is defined in the Social Security Act and Regulations.

(Tr. 16–17.)

## III. Conclusions of Law

### A. Standard of Review

Judicial review of "any final decision of the Commissioner of Social Security made after a hearing" is authorized under section 205(g) of the Social Security Act, which empowers the district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). This court reviews the final decision of the SSA to determine whether substantial evidence supports that agency's findings and whether it applied the correct legal standards. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016). Substantial evidence means "'more than a mere scintilla' but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). In determining whether substantial evidence supports the agency's findings, a court must examine the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)). The agency's decision must stand if substantial evidence supports it, even if the record contains evidence supporting the opposite conclusion. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 473 (6th Cir. 2016) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

5

Accordingly, this court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). Where, however, an ALJ fails to follow agency rules and regulations, the decision lacks the support of substantial evidence, "even where the conclusion of the ALJ may be justified based upon the record." *Miller*, 811 F.3d at 833 (quoting *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014)).

## B. The Five-Step Inquiry

The claimant bears the ultimate burden of establishing entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). The agency considers a claimant's case under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

1. A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. A claimant who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart B of the Regulations. Claimants with lesser impairments proceed to step four.

6

4. A claimant who can perform work that he has done in the past will not be found to be disabled.

5. If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

*Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (citing *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007)); 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden through step four of proving the existence and severity of the limitations her impairments cause and the fact that she cannot perform past relevant work; however, at step five, "the burden shifts to the Commissioner to 'identify a significant number of jobs in the economy that accommodate the claimant's residual functioning capacity[.]" *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 628 (6th Cir. 2016) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).

The agency can carry its burden at the fifth step of the evaluation process by relying on the Medical-Vocational Guidelines, otherwise known as "the grids," but only if a nonexertional impairment does not significantly limit the claimant, and then only when the claimant's characteristics precisely match the characteristics of the applicable grid rule. *See Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010); *Wright v. Massanari*, 321 F.3d 611, 615–16 (6th Cir. 2003). Otherwise, the grids only function as a guide to the disability determination. *Wright*, 321 F.3d at 615–16; *see Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). Where the grids do not direct a conclusion as to the claimant's disability, the agency must rebut the claimant's prima facie case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, typically through vocational expert testimony. *Anderson*, 406 F. App'x at 35; *see Wright*, 321 F.3d at 616 (quoting SSR 83-12, 1983 WL 31253, *4 (Jan. 1, 1983)).

When determining a claimant's residual functional capacity ("RFC") at steps four and five, the agency must consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 499 (6th Cir. 2014) (citing 20 C.F.R. § 404.1545(e)).

### C. Plaintiff's Statement of Errors

*1. Treating Physician*

Dunfee first argues that the ALJ erred by improperly weighing the opinion of her treating physician, Dr. King. (Docket No. 15, pp. 6–9.) An ALJ must give a treating source's opinion controlling weight "if he finds the opinion 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(c)(2)). The ALJ "is not bound by a treating source's opinions, especially when there is substantial medical evidence to the contrary." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994) (citations omitted). That said, the ALJ is required to provide "good reasons" for discounting the weight given to a treating source's opinion. *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (quoting SSR 96-2p).

The court finds that in the present case, the ALJ provided sufficient good reasons for discounting the opinion of Dr. King. The ALJ noted that Dr. King only saw Dunfee two to three

times and that his Medical Source Statement was given more than six months after his last examination of her. (Tr. 16.) Indeed, Dr. King could not even "[c]haracterize the nature, location, radiation, frequency, precipitating factors, and severity" of Dunfee's pain because, as he stated, he had not evaluated her in the last six months. (Tr. 377.) The nature and extent of a treating relationship is relevant to the weight given to a physician's opinion and a treating source that sees a claimant with infrequent consistency is generally entitled to less weight. 20 C.F.R. §§ 404.1527, 416.927; *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 729 (6th Cir. 2013).

Furthermore, the ALJ found that Dr. King's opinion was "not consistent with itself and with other objective evidence of record." (Tr. 16.) For example, Dr. King's own, limited records indicate he found that Dunfee's only positive objective sign of pain was impaired sleep. (Tr. 377.) Additionally, Dr. King prescribed Dunfee no medications since January 2012 and described her prognosis as "fair." (Tr. 377, 378.) This contradicts many of the limitations he recommends. It also contradicts Dr. Keown's examination findings, which were unremarkable. (Tr. 334.) The Sixth Circuit has repeatedly held that the opinions of treating physicians are not entitled to receive great weight if they are not supported by sufficient clinical findings or consistent with the evidence. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (quoting *Bogle v. Sullivan*, 998 F.2d 342, 347–48 (6th Cir. 1993)).

Finally, Dunfee's argument fails to acknowledge that the ALJ did in fact give a degree of weight to Dr. King's opinion; he simply did not accord it great weight. (Tr. 16.) In fact, the ALJ incorporated several of Dr. King's recommended limitations into Dunfee's RFC, such as her ability to occasionally lift and carry ten pounds, inability to ever climb ladders, and ability to occasionally stoop and crouch. (Tr. 15, 379.) *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391–92 (6th Cir. 2004) ("[W]e find it significant that the administrative law judge did not reject

wholesale the conclusions of Dr. Sonke and indeed incorporated [some of] Dr. Sonke's conclusions[.]"). The court therefore finds that the ALJ adequately explained his decision to partially discredit Dr. King's opinion, and the decision is supported by substantial evidence. Dunfee's first statement of error is thus meritless.

### 2. *RFC Supportability*

Dunfee next argues that the ALJ's RFC determination is not supported by substantial evidence because "[t]here is absolutely no source in the record that attests that [she] can do light work." (Docket No. 15, p. 10.) "The ALJ is charged with the responsibility of determining the RFC based on her [or his] evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). According to SSR 96-5p, the Commissioner has final responsibility for deciding an individual's RFC, and to require the ALJ to base his or her RFC finding on a physician's opinion "would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." Dunfee's argument is thus unpersuasive.

Dunfee also contends that the ALJ was not qualified to interpret her radiology test results. Again, however, the ALJ is required to evaluate the medical evidence to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (stating that "the ALJ is charged with the responsibility of evaluating the medical evidence"); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ not a physician ultimately determines a claimant's RFC. ... An ALJ does not improperly assume the role of a medical

expert by weighing the medical and non-medical evidence before rendering an RFC finding."). The ALJ in the present case did not interpret raw medical data. In summarizing the radiology report, CT scan, and x-ray performed on December 30, 2012, he stated:

> CT of the cervical spine obtained that date was negative for fracture or traumatic malalignment. There was multilevel cervical spondylosis, most pronounced at the C5/C6 and C6/C7 levels. X-ray of the left shoulder was negative. Chest radiograph showed no acute cardiopulmonary process. X-ray of the left humerus was normal.

(Tr. 17.) The ALJ's summary directly quoted the findings and impressions made by the reading physician (Tr. 17, 395, 397, 398, 399), and Dunfee offers no example or evidence of the ALJ independently interpreting any of the medical data. The ALJ's conclusions were thus consistent with the physician's interpretation of the tests. The court finds Dunfee's second argument is without merit.

### 3. *Credibility*

Lastly, Dunfee claims that the ALJ erred in evaluating the credibility of her subjective complaints of pain.[3] (Docket No. 15, pp. 11–12.) Although an ALJ may consider subjective complaints as evidence in support of a disability, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475–76 (6th Cir. 2003). Application of the regulations to claims of pain requires a two-step approach. First, medical signs or laboratory findings must show that the claimant suffers from medically

---

[3] Dunfee raises her argument under *Duncan v. Sect'y of Health & Human Servs.*, 801 F.2d 847, 852 (6th Cir. 1986), and the Commissioner's argument in response relies primarily on the regulations (Docket No. 16, pp. 10–13). To be clear, the Sixth Circuit has held on multiple occasions that subjective claims of pain may be analyzed under the *Duncan* test or by the standards in 20 C.F.R. §§ 404.1529 and 416.929. *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 835 (6th Cir. 2005); *Baranich v. Barnhart*, 128 F. App'x 481, 487 (6th Cir. 2005); *McCoy on Behalf of McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995).

11

determinable impairments which could reasonably be expected to result in the alleged symptoms. 20 C.F.R. §§ 404.1529(b) and 416.929(b). Once that is established, the intensity and persistence of these symptoms is evaluated to determine what functional limitations, if any, they place on the claimant. *Id.* §§ 404.1529(c)(1) and 416.929(c)(1). All relevant evidence must be considered. *Id.* §§ 404.1529(c) and 416.929(c). The following factors may be considered: the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain; precipitating and aggravating factors; the effectiveness of medication or other treatment; other measures to relieve the pain; and any other relevant factors. *Id.* §§ 404.1529(c)(3) and 416.929(c)(3); *see also* SSR 96-7p.

Where an ALJ's credibility assessment is fully explained and not at odds with uncontradicted evidence in the record, it is entitled to great weight. *See King v. Heckler*, 742 F.2d 968, 974–75 (6th Cir. 1984) (noting the rule that an ALJ's credibility assessment is entitled to "great weight," but "declin[ing] to give substantial deference to the ALJ's unexplained credibility finding" and holding it was error to reject uncontradicted medical evidence); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) (holding that ALJ was entitled to "rely on her own reasonable assessment of the record over the claimant's personal testimony"); *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994) (holding that ALJ's credibility assessment is entitled to substantial deference). Substantial deference has been held to mean that "an [ALJ's] credibility findings are virtually 'unchallengable.'" *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (quoting *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 113 (6th Cir. 2010)). Nevertheless, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011) (citation omitted).

Here, the ALJ found that Dunfee suffered from medically determinable impairments that could reasonably be expected to cause some of the alleged symptoms. (Tr. 14.) Dunfee, thus, satisfied the first step; yet she fails the second because the ALJ properly considered the regulatory factors, and substantial evidence supports the ALJ's credibility findings. For instance, the ALJ noted that Dunfee's treating physician, Dr. King, only saw Dunfee two to three times, had written no prescriptions for her since January of 2012, could not characterize any information whatsoever related to her pain, since he had not evaluated her in six months, and stated that her prognosis is fair. (Tr. 16, 377.) The ALJ further noted that, on March 21, 2011, Dr. Keown performed a consultative examination of Dunfee and found that she ambulated with ease, had no problems getting up from the chair, had no cyanosis, clubbing, or edema, and she performed unremarkable straightaway walk, tandem step, one-foot stand, and Romberg test. (Tr. 16–17, 334.) Additionally, as discussed above and as recited by the ALJ, the objective medical evidence showed only mild findings. (Tr. 17, 393–99.) It is also worth mentioning that, while one state agency physician opined that Dunfee had no exertional limitations and another opined that she had no severe physical impairments, in both instances the ALJ gave Dunfee the greater benefit of the doubt. (Tr. 17.) Dunfee's other contention, that the ALJ failed to make a specific finding concerning her allegations, is belied by the fact that the ALJ stated that "claimant's statements … [were] not entirely credible[.]" (Tr. 16.) Therefore, given the highly deferential standard of review and the substantial evidence that supports the ALJ's assessment, the court finds that the ALJ did not err in his credibility determination.

## IV. Conclusion

For the reasons stated herein, Plaintiff's Motion for Judgment on the Record (Docket No. 14) will be denied and an appropriate Order entered.

ENTER this 31st day of July 2017.

                                                  _____
                                                  ALETA A. TRAUGER
                                                  UNITED STATES DISTRICT JUDGE